# In the United States Bankruptcy Court
# for the
# Southern District of Georgia
## Savannah Division

In the matter of:                    )
                                     )    Adversary Proceeding
KURT E. GRAHAM                       )
(Chapter 12 Case <u>07-40427</u>)          )    Number <u>07-4124</u>
                                     )
            *Debtor*                 )
                                     )    **FILED**
                                     )    Samuel L. Kay, Clerk
                                     )    United States Bankruptcy Court
                                     )    Savannah, Georgia
KURT E. GRAHAM                       )    By lbarnard at 11:25 am, Feb 25, 2009
                                     )
            *Plaintiff*               )
                                     )
v.                                   )
                                     )
CAREY GRAHAM                         )
                                     )
            *Defendant*               )

## MEMORANDUM AND ORDER
## ON DEFENDANT'S MOTION FOR NEW TRIAL,
## MOTION TO ALTER OR AMEND JUDGMENT,
## MOTION FOR STAY OF PROCEEDINGS TO ENFORCE A JUDGMENT,
## AND MOTION TO ALLOW TIME TO PREPARE AND FILE TRANSCRIPT

Debtor's Chapter 12 was filed on March 22, 2007. The Meeting of Creditors held pursuant to 11 U.S.C. § 341 was conducted on April 25, 2007. At the time of filing, Debtor contended that he was the holder of a lease over Farm Number 791 in Effingham County, Georgia, sometimes referred to as the "Turf Farm." The real estate located on the Turf Farm is family property formerly owned by Debtor's grandmother and

AO 72A
(Rev. 8/82)

now owned in three undivided shares by his father, Ralph Graham (hereinafter referred to as "Ralph"), his aunt, Julie Weddle (hereinafter referred to as "Julie"), and his uncle, Carey Graham (hereinafter referred to as "Carey"). Carey's son, Loy Graham (hereinafter referred to as "Loy"), has an interest in farming some of the property located on the Turf Farm, and at some previous time, approximately 55 acres of land, identified as Tracts H and G, was carved out for Loy to conduct farming operations on. See 2004 Lease Agreement, Exhibit D-9; 2005 Lease Agreement, Exhibit D-11; 2006 Lease Agreement, Exhibit D-13.

Debtor entered into a lease for the Turf Farm with Carey, Ralph and Julie in 2004. The lease was renewed in 2005 and 2006. In this Court's order finding Carey willfully violated the automatic stay, this Court held that Debtor effectuated a lease in 2007 by virtue of Carey's receipt and negotiation of a check given to him by Debtor and by Ralph and Julie's subsequent acceptance of similar checks. See Order, Dckt.No. 49, pg. 3 (January 26, 2009).

In May 2007, notwithstanding Carey's knowledge that Debtor had filed a Chapter 12 as evidenced by notices issued by this Court mailed to him and by his attendance at the § 341 meeting in April 2007, Carey entered upon Tract C, one of the tracts of land that was subject to the lease, and began "harrowing up" land that had been prepared and bedded for Debtor's intended planting of a peanut crop for 2007. Upon discovering Carey's activity, Debtor contacted his attorney, Lehman Franklin, who wrote a letter to Carey informing him that his activities constituted a violation of the automatic stay of bankruptcy and demanding

2

that he cease any further activity. *See* Exhibit D-17. Debtor and Ralph picked up the original of that letter at Mr. Franklin's office, drove to the Turf Farm, and discovered Carey in the act of harrowing Debtor's leased land. Carey initially ignored them, but ultimately Debtor physically delivered Mr. Franklin's letter to Carey, and Carey read the letter. Carey does not deny that he thereafter resumed harrowing the land thus rendering it unsuitable for planting the peanut crop. Because of Carey's interference with Debtor's leasehold rights, Debtor was unwilling to risk planting a peanut crop on that tract or any of the other tracts within the Turf Farm, believing to do so would risk destruction of the crop at Carey's hands. Order, Dckt.No. 49, pgs. 4-5 (January 26, 2009).

On July 11, 2007, Debtor brought an adversary proceeding seeking damages for Carey's willful violation of the automatic stay under 11 U.S.C. § 362(k), including the anticipated profit he believes would have been earned from a successful 2007 peanut crop. Complaint, Dckt.No. 1. This Court held a trial on this adversary proceeding on November 17, 2008. On January 26, 2009, this Court entered a memorandum and order finding that Carey willfully violated the automatic stay and awarded Debtor actual damages in the amount of $41,267.00, plus attorney's fees and punitive damages in an amount to be determined at a later hearing. Order, Dckt.No. 49. On February 4, 2009, Carey filed a motion for a new trial, motion to alter or amend judgment, motion for stay of proceedings to enforce a judgment, and a motion to allow time to prepare and file transcript. Motion, Dckt.No. 51.

CONCLUSIONS OF LAW

Federal Rule of Bankruptcy Procedure 9023, which incorporates Federal Rule of Civil Procedure 59, states:

> (a)(1) The court may, on motion, grant a new trial on all or some of the issues - and to any party - as follows: . . .
>
> (B) after a nonjury trial, for any reason for which a new trial has heretofore been granted in a suit in equity in federal court;
>
> (2) After a nonjury trial, the court may, on motion for a new trial, open judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment.

"Defendant seeks a new trial on the following grounds: (1) manifest error of law; (2) manifest error of fact; and (3) newly discovered evidence." Motion, Dckt.No. 51, pg. 1(*citing* Brown v. Wright, 588 F.2d 708 (9th Cir. 1978); In re Devault, 4 B.R. 382 (Bankr.E.D.Penn. 1980). Also, "Defendant seeks to alter or amend the judgment on the following grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice." Id., pg. 3 (*citing* Sussman v. Salem, Saxon & Nielsen, P.A., 153 F.R.D. 689, 694 (M.D.Fla. 1994)). Defendant incorporates the same arguments in his motion for a new trial to his motion to alter or amend judgment, thus I will address each concurrently:

## 1. Defendant's First Ground

Defendant makes the following argument:

> The Court misinterpreted/misapplied/disregarded Georgia law, which provides that "a tenant in common has, by virtue of his relationship as such, no authority to act as agent for his cotenant[s] in leasing the common property to third persons, and the law will not infer one cotenant's authority to lease the other[s'] interest, simply because a leasing was contemplated." Friedman v. Goodman, 222G Ga. 613, 618, 151 S.E.2d 455, 459 (1966). It is clear in this case that Ralph "tore up" the lease agreement signed by Carey. Therefore, Kurt did not have a farm lease with Carey, Ralph and Julie.

Motion, Dckt.No. 51, pgs. 1-2.

Defendant also stated in a footnote "[f]urthermore, Kurt did not have a lease with Carey because Carey's agreement to lease was contingent upon the approval of Ralph and Julie."

Debtor entered into a lease for the Turf Farm with Carey, Ralph and Julie in 2004. Debtor's lease was renewed in 2005 and 2006. The 2006 lease agreement provided the lease could "be renewed for the next year at the approval of the Lessors." 2006 Lease Agreement, Exhibit D-12. In late 2006, Loy, who was desirous of obtaining an additional 55 acres to farm, made a proposal to Debtor to take over an additional portion of the Turf Farm, labeled as Tract D. Proposal, Exhibit D-14. His proposal was signed by Debtor and initialed by Carey on Loy's behalf on February 5, 2007.

On February 5, 2007, Debtor wrote a check for $9,348.00 to Carey. On the check, Debtor wrote the purpose of the check was for "Land Rent." Carey thereafter negotiated the check and the check cleared the bank. The amount of the check was the same value as the land rent provided for in the 2006 Lease Agreement minus the land rent deduction provided in the November 27, 2006 proposal. Kurt testified that he also sent checks to Ralph and Julie and that they were later cashed. Thereafter, Debtor entered possession of the property prior to the bankruptcy filing and attempted to continue his farming operations.

These facts led the Court to rule in a preliminary injunction order that Kurt had a valid lease for 2007. Order, Dckt.No. 10 (July 23, 2007). It was followed by a consent order to that effect. Interim Order on Motion to Assume Lease, Case No. 07-40427, Dckt.No. 190 (September 21, 2007). That was followed by this Court's pre-trial order which stated that Debtor was not required to produce at trial any additional evidence to establish the following conclusion:

> The Lease Agreement entered into between Debtor and the Defendant in 2004, and the payment and acceptance of the rent for farm year 2007, conferred a property interest in Farm No. 791 in Effingham County, Georgia, to Debtor.

The pre-trial order also stated that both Debtor and Carey were "at liberty to produce evidence concerning any modifications to that lease agreement for the 2007 crop year and

subsequent years, if relevant . . . " Pre-Trial Order, Dckt.No. 41 (November 10, 2008). Carey presented no new persuasive facts or legal argument at trial, thus the Court reaffirmed its prior holding. Order, Dckt.No. 49. In the present motion, Carey now rehashes old, tired and rejected arguments.

Citing Friedman v. Goodman, 222G Ga. 613, 618, 151 S.E.2d 455, 459 (1966), Defendant argues that this Court misinterpreted/misapplied/disregarded Georgia law, when in fact, Defendant misapplies that holding. While it may be true that "'a tenant in common has, by virtue of his relationship as such, no authority to act as agent for his cotenant in leasing the common property to third persons," Friedman, 222 Ga. at 618, that did not occur here. All three owners of the Turf Farm in the present case negotiated the checks given to them by Debtor, and by their acts renewed the 2006 Lease Agreement as modified by the November 2006 proposal.

### 2. Defendant's Second Ground

Defendant also makes the following argument:

> In calculating damages, the Court failed to properly take into account Plaintiff's peanut yield history, failed to use the proper expected selling price and failed to account for the fact that Plaintiff planted soybeans instead of peanuts, making profit on the soybeans.

Motion, Dckt.No. 51, pg. 2.

First, this Court did account for Debtor's peanut yield history and concluded that a yield estimate of 3,700 pounds per acre fell within the mid-range of production by Debtor for the four prior crop years. See Order, Dckt.No. 49, pg. 11, n. 3. Second, this Court did address the expected selling price stating that Carey did not provide any persuasive evidence on this point thus finding that the average price for 2007 peanuts of $483.00 per ton was reasonable. See Id., at pg. 13. Third, Debtor testified at the hearing that he possessed the soybean seed prior to bedding Tract C for peanuts, and that before Carey's willful violation, his plan was to plant peanuts on Tract C and B and plant soybeans on the roughly 270 other acres that ultimately went unplanted. Carey did not present any persuasive evidence to the contrary.

Further, this is not the proper forum for Defendant to make these arguments. If Defendant does not accept the holding of the underlying order, he should appeal rather than pursue this baseless motion which seeks only to reiterate matters previously tried.

### 3. Defendant's Third Ground

Last, Defendant makes the following argument:

> Given the confusion over the lease agreement, given the Court's assertion that the validity of the lease was an "open question" and given the Court's multiple rulings concerning the lease, which are to a certain extent contradictory, the Court's conclusion that Carey willfully

interfered with Kurt's leasehold rights is erroneous. At the very least, the Court's conclusion that punitive damages should be awarded because Carey acted with malicious intent to harm and/or in arrogant defiance of federal law is not borne by the facts, especially considering the good faith efforts made by Carey to ascertain whether Ralph and Julie ever agreed to the lease and whether a signed contract existed between the parties.

<u>Motion</u>, Dckt.No. 51, pg. 2.

Though he now claims that Debtor did not have a valid lease, Carey acted previously as though Debtor had a valid lease. Carey negotiated a check given to him by Debtor for "Land Rent" for the 2007 crop year and allowed Debtor on the Turf Farm to prepare for the farm year. Carey did not file any action in state court or even later in bankruptcy court to evict Debtor, to recover damages, or to determine the validity of the lease. Instead, after Debtor filed for Chapter 12, after Debtor listed the farming lease on his Schedule G, and after Carey attended the creditors' meeting, Carey took the law into his own hands, "in flagrant disregard of the mandates of federal law" when "he took it upon himself to act in violation of Debtor's rights." The proper action for Carey to have taken was filing an action in this Court determining the validity of Debtor's lease.

Moreover, he made matters worse "when he was handed the letter from Kurt's counsel by Debtor advising him of his potential liability, he did not cease as any reasonable person would. Instead, he continued harrowing the field . . ." Carey's actions after receiving the letter "demonstrates that Carey cannot be relied on to follow the law by

the mere imposition of actual damages and attorney's fees." Carey is free to contest the amount of punitive damages by showing mitigating factors at the next hearing, but the determination that punitive damages in some amount are called for stands.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Defendant's Motion for New Trial, Motion to Alter or Amend Judgment, Motion for Stay of Proceedings to Enforce a Judgment, and Motion to Allow Time to Prepare and File Transcript are DENIED.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 24th day of February, 2009.