# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

|  |  |  |
|---|---|---|
| In the matter of: | ) | Adversary Proceeding |
|  | ) |  |
| KURT E. GRAHAM | ) | Number <u>07-4124</u> |
| (Chapter 12 Case <u>07-40427</u>) | ) |  |
|  | ) |  |
| Debtor | ) |  |
|  | ) | **FILED** |
|  | ) | Samuel L. Kay, Clerk |
| KURT E. GRAHAM | ) | United States Bankruptcy Court |
|  | ) | Savannah, Georgia |
| Plaintiff | ) | By lbarnard at 11:51 am, Jun 18, 2009 |
|  | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
|  | ) |  |
| CAREY GRAHAM | ) |  |
|  | ) |  |
| Defendant | ) |  |

## MEMORANDUM AND ORDER

The Court has previously awarded actual damages in the above-captioned case in favor of Kurt E. Graham and against Carey Graham in the amount of $41,267.00 and also awarded attorney's fees and punitive damages, amounts of which were reserved for a later hearing. *See* <u>Order</u>, Dckt. No. 49 (January 26, 2009). An evidentiary hearing was conducted in this matter on June 8, 2009, and I hereby make the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Defendant Carey Graham (hereinafter "Carey") was determined to have committed an intentional violation of the automatic stay in my previous order and I reaffirm that finding. Although Carey and his counsel continue to argue that there may have been some degree of justification for his acts arising out of the complicated and stormy relationship he has with Debtor and with other members of the Graham family, I concluded in the past and reaffirm that those issues, no matter how difficult they may be, do not justify Carey or anyone else with knowledge of a pending bankruptcy case acting in a way which is violative of the preeminent and indispensable protection that debtors have under 11 U.S.C. § 362. When he engaged in the acts which he was found to have committed, he acted without any legal justification and is liable for damages, attorney's fees and punitive damages in an appropriate amount.


## Attorney's Fees

The evidence revealed that Kurt's attorney, Lehman Franklin, the associate in his firm, his paralegal and his secretarial staff devoted over 200 hours in the prosecution of this case. At the applicable hourly rates for their individual work the total professional fees sought are $32,535.25, together with expenses advanced of $1,918.47 for a total of $34,453.72. It was stipulated that Mr. Franklin's billing statement could be admitted into the record, and he was subjected to cross examination. During the cross examination, a number of entries were conceded to be only partially or perhaps not at all related to this adversary and were more appropriately chargeable to the services he has rendered in the underlying Chapter

12 case in which he serves as counsel to Debtor. There were also a number of entries in which Mr. Franklin, his associate Kim Ward, and members of his staff engaged in interoffice discussions for which each of them recorded time and for which he seeks compensation. The argument that these entries are duplicative and should not be permitted has been carefully considered, as has Mr. Franklin's contention that in order to prosecute the case and to hold down costs it is necessary to delegate a large number of tasks to attorneys whose hourly rate is lower because of their level of experience or to non-lawyer para-professionals. If this is the case, it is also necessary for these individuals to communicate. I therefore conclude that to the extent there are what appear to be duplicated entries for the same work by multiple members of his staff, those fees are allowable because of their overall impact in lessening the amount of fees.

The result is that I award attorney's fees and expenses advanced in the amount of $30,000.00 finding that the remainder of the services were actual and necessary to the prosecution of the case and that the hourly rates charged by counsel and his staff meet the requirements of the lodestar analysis set forth in <u>Norman v. Housing Auth. of the City of Montgomery</u>, 836 F.2d 1292, 1299 (11th Cir. 1988) (citation omitted). While this is a large sum, the case has been vigorously defended and highly contentious. That history carries a price tag.

<u>Punitive Damages</u>

11 U.S.C. § 362(k) provides that an individual injured by any willful

✎AO 72A
(Rev. 8/82)

violation of the stay "shall recover actual damages including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." As the case now stands, I have awarded actual damages in the amount of $41,267.00, plus $30,000.00 in attorney's fees. In the Court's original order, this Court awarded punitive damages but, "because such amount must be set at a level sufficient to punish and deter wrongful conduct," saved consideration of the amount until after a later hearing. Order, Dckt. No. 49, pg. 15. This Court has held that hearing and will now assign the amount.

On the one hand, it is clear that Carey violated the stay and did so intentionally. On the other hand, the damages already determined by this Court exceed $70,000.00 for actions that he took which in the final analysis were short-lived in duration, which inflicted no physical or emotional pain on the Debtor, and for which Carey appears, although exceedingly slowly, to have come to regret. In setting punitive damages, courts often find it necessary or appropriate to consider in assessing the conduct of the person who committed the act, the financial resources available to that person, recognizing that a small award may be sufficient to deter future conduct by someone of modest means while it may be required to be substantially larger for an individual or company of greater means.

Testimony at the hearing revealed that Carey is by any commonly-understood standard a very well-to-do individual in the sense that he owns vast tracts of real estate, including timberland, and has minimal debt. The specifics of his net worth are not necessary to quantify in this order. There is sufficient evidence that a substantial punitive

damage award could be justified based on his economic circumstances.

Furthermore, his counsel continues to argue, in effect, that his acts were understandable or justifiable or should be placed in the context of the larger dispute which engulfs this family.[1]  While I reject that contention as being sufficient to eliminate my previous award of punitive damages, I do find that elements of that argument can be considered in mitigation of the amount.

In particular, Carey, who always contended that there was no lease in favor of Debtor over the land where the violation occurred because the written lease being circulated among himself and his two co-owners had been torn up prior to the time it was fully executed, attended the creditors' meeting.  His presence was an important element in my earlier conclusions that he knew a bankruptcy was in process and knew that he was acting in violation of Debtor's contention that he held a lease over the property.  However, Carey contends, and the record from that meeting does show, that the issue as to whether a lease existed for the Turf Farm came up at the § 341 meeting and that Debtor or his counsel

_____

[1]  In this Court's original order, I awarded actual damages as well as punitive damages and attorney's fees. I awarded punitive damages because I wanted to punish and deter Carey's wrongful conduct. *See* Order, Dckt. No. 51, pg. 15 (February 4, 2009). "[T]he primary purpose of punitive damages awarded for a willful violation of the automatic stay is to cause a change in the [Defendant's] behavior . . . " Bishop v. U. S. Bank Firstar Bank, N.A. (In re Bishop), 296 B.R. 890 (Bankr. S.D.Ga. 2003)(Davis, J.). Carey then filed a Motion for Reconsideration in part to attack this Court's award of punitive damages. Motion, Dckt. No. 51, pg.2 (February 4, 2009). In denying Carey's motion, I rejected the same arguments and reemphasized that punitive damages were warranted. I also emphasized that in the continued hearing, Carey could dispute the amount of punitives to be awarded, but "the determination that punitive damages in some amount are called for stands." However, in the June 8, 2009, hearing and also a post-trial letter brief, Carey for a third time makes the same old and tired arguments that punitive damages should not be awarded. *See* Brief, Dckt. No. 114 (June 12, 2009). For the reasons stated in my original order and in my order denying Carey's Motion for Reconsideration, I reaffirm that punitive damages are warranted in this case.

promised to provide Carey with a copy of it. That meeting was held on April 25, 2007. No lease was ever delivered to Carey because indeed it had been torn up and no executed copy was in existence. Accordingly, when Carey undertook to harrow the land which was the basis for my finding that he committed an act which violated the stay on May 16, 2007, he had not been given a document which he had been promised.

Notwithstanding the nonexistence of the written lease, I ruled that based on the conduct of the parties and the tender and acceptance of land rent for the tract for 2007 that a valid lease existed. Accordingly, when Carey acted in violation of Debtor's rights as a tenant, he committed a stay violation. However, because the existence or nonexistence of the lease was such a critical issue between them and because he had been promised a copy at the § 341 meeting and had not been provided with one, I find that Carey is entitled to some consideration in mitigation of his action. I do not find the failure to provide the lease was in any way the fault of Mr. Franklin because, in fact, there was no executed lease, and I believe his representations that he would provide Carey with a copy were made in good faith at the time he made them. Nevertheless, the fact remains that he could not produce one and that Carey, who was expecting to see one, was not given what he was promised.

That fact, coupled with the magnitude of the actual damages already awarded, bring me to the conclusion that a substantial punitive damage award would be inappropriate. Because the amount of actual damages and attorney's fees is so large, it is simply unnecessary to add on a significant multiplier to accomplish the necessary purposes

%AO 72A
(Rev. 8/82)

of a punitive damage award. In contrast, this Court has entered punitive damages award where the amount of punitive damages far exceeded any actual damages because the violation was clear, was reprehensible, and did cause some actual damage. *See* In re Bishop, 296 B.R. 890, 898-99 (Bankr. S.D.Ga. 2003).

Here, however, Carey has been significantly punished by the actual damages and the attorney's fees which I have found appropriate. Considering all the factors in their entirety and recognizing that some punitive award is appropriate, I conclude that an award of punitive damages in the amount of $5,000.00 is sufficient to accomplish the purposes for which the statute exists.

### O R D E R

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that judgment be entered in favor of Kurt E. Graham and against Carey Graham in the amount of $41,267.00 in actual damages, $30,000.00 in attorney's fees and expenses advanced, and $5,000.00 in punitive damages.

IT IS FURTHER ORDERED that payment of this judgment shall be tendered directly to Debtor's counsel, Lehman Franklin, who is free to disburse the attorney's fees and costs that he has advanced to his firm's regular account. He is directed, however, to hold the actual damage award and the punitive damage award in his Trust Account pending a review by the Chapter 12 Trustee and this Court. It appears those sums represent

property of the estate which should be distributed to creditors in addition to the plan payments contained in the confirmed Chapter 12 plan. *See* 11 U.S.C. § 1207; In re Waldron, 536 F.3d 1239 (11th Cir. 2008).


_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge


Dated at Savannah, Georgia

This ___ day of June, 2009.